NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
MAYRA ROSARIO,                          :
                                        :
    Plaintiff,                         :    Civil Action No. 16-9593 (SRC)
                                        :
v.                                      :    **OPINION**
                                        :
COMMISSIONER OF SOCIAL                  :
SECURITY,                               :
                                        :
    Defendant.                         :
_____:

**CHESLER, District Judge**

    This matter comes before the Court on the appeal by Plaintiff Mayra Rosario ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. Civ. R. 9.1(b), finds that the Commissioner's decision will be affirmed.

    In brief, this appeal arises from Plaintiff's application for disability insurance benefits, alleging disability beginning March 20, 2012. A hearing was held before ALJ Jonathan L. Wesner (the "ALJ") on September 9, 2014, with a supplemental hearing held on February 10, 2015, and the ALJ issued an unfavorable decision on April 30, 2015, finding Plaintiff not disabled. After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the Commissioner's final decision, and Plaintiff filed this appeal.

    In the decision of April 30, 2015, the ALJ made the following findings. The ALJ found

that, at step three, Plaintiff did not meet or equal any of the Listings. At step four, the ALJ found that Plaintiff retained the residual functional capacity to perform light work, with certain limitations, including a limitation to unskilled work. At step four, the ALJ also found that this residual functional capacity was not sufficient to allow Plaintiff to perform her past relevant work. At step five, the ALJ consulted a vocational expert and concluded that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ concluded that Plaintiff was not disabled within the meaning of the Act.

Plaintiff contends that the decision should be reversed on three grounds: 1) the ALJ erred in assigning little weight to the opinion of Plaintiff's treating physician; 2) the ALJ erred in assigning little weight to the opinions of Plaintiff's treating nurse practitioners; and 3) the ALJ used the incorrect legal standard to assess Plaintiff's credibility.

As to the first point, regarding the weight the ALJ gave to the opinion of Plaintiff's treating physician, Dr. Friedman, Plaintiff fails to persuade both that the ALJ erred and that any error materially prejudiced her. At step four, the ALJ reviewed the medical evidence in detail. Turning to Dr. Friedman, the ALJ summarized the expert's opinion, as stated in Dr. Friedman's report dated September 18, 2014, and then stated:

> I assign little weight to Dr. Friedman's opinion, finding it is inconsistent with the claimant's broad range of daily activities. Furthermore, her treatment records do not reveal limitations (such as a purported need to lie down or a tendency to be off-task) as suggested by Dr. Friedman.

(Tr. 31.)

With regard to Dr. Friedman's opinion, Plaintiff makes no persuasive points about how

2

the ALJ erred. Plaintiff cites 20 C.F.R. § 404.1527(c), which sets forth a set of factors that must be considered in deciding how much weight to give to a medical opinion. Plaintiff, however, makes no specific argument about what the problem is. Absent an argument, a citation to regulations alone makes no persuasive point.

Plaintiff next quotes SSR 96-2p: "If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; i.e., it must be adopted." Again, Plaintiff's brief fails to apply this to the case at hand. The ALJ explained that Dr. Friedman's opinion was not well-supported and was inconsistent with other substantial evidence of record. As such, the ALJ's weighting of Dr. Friedman's opinion entirely complied with the quoted language from SSR 96-2p.

Similarly, Plaintiff's brief quotes the Third Circuit's decision in Morales v. Apfel:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." . . . In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion.

Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). Again, Plaintiff does not make any specific argument applying Morales to this case. It is quite clear that the ALJ gave little weight to Dr. Friedman's opinion because he found it to be both inconsistent with the medical evidence and contradicted by other medical opinion. This is not error under Morales.

Significantly, Plaintiff's arguments rely on abstract points of law and make no contact with what Dr. Friedman actually wrote. Dr. Friedman's report makes no statements about Plaintiff's ability to work. The report states: "Pulmonary Function tests show mild obstruction"

3

and "As above, her anxiety/obesity play a large role in her symptoms.  Her breathing tests only show mild disease."  (Tr. 1186, 1188.)  Dr. Friedman clearly stated that Plaintiff's breathing-related disorder is a mild one.  Plaintiff makes no attempt to demonstrate how, had the ALJ given that assessment greater weight, it would likely have changed the outcome to finding Plaintiff disabled.

This Court finds two statements in Dr. Friedman's report that, given greater weight, might have impacted the outcome: 1) the statement that Plaintiff needed supine rest at least 1.5-2 hours per day on an occasional basis (1-2 days per week); and 2) the statement that Plaintiff is likely to be "off task" during 25% or more of a typical workday.  (Tr. 1187-88.)  As already stated, the ALJ gave Dr. Friedman's opinion little weight because he found it inconsistent with the broad range of Plaintiff's daily activities and unsupported by the treatment records.  Plaintiff's brief does not point to any evidence that shows that the ALJ's assessment was ill-founded.  In the absence of evidence showing that the ALJ was wrong in his assessment, this Court has no basis to consider it erroneous.  Furthermore, Plaintiff's brief summarizes her medical history and the medical evidence, but there is nothing in that summary that indicates that Plaintiff has a particular need for supine rest.  (Pl.'s Br. 4-7.)

Plaintiff has not come close to persuading this Court either that the ALJ erred with regard to Dr. Friedman's opinion or that any error was harmful.  The Supreme Court explained the harmless error doctrine in a similar procedural context in <u>Shinseki v. Sanders</u>, 556 U.S. 396, 409 (2009), which concerned review of a governmental agency determination.  The Court stated: "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  <u>Id.</u>  In such a case, "the claimant has the 'burden' of showing that an error was

4

harmful." Id. at 410. Thus, to succeed on appeal, Plaintiff must show both that the ALJ erred, and that the error was harmful. As to the issue of Dr. Friedman's opinion, Plaintiff has done neither.

Plaintiff next argues that the ALJ erred by giving little weight to the opinions of Plaintiff's treating nurse practitioners. The ALJ reviewed the reports of Plaintiff's two treating nurse practitioners and stated, as to each, that nurse practitioners are not "acceptable medical sources," within the meaning of the regulations. (Tr. 30, 31.) Plaintiff objects to these statements. The phrase, "acceptable medical sources," is a legal term of art, not a value judgment. On page 16, Plaintiff's brief concedes that the ALJ's use of "acceptable medical source" is technically correct.[1]

As to both nurse practitioners, the ALJ stated that, while they were not "acceptable medical sources" and that he gave no weight to their opinions, nevertheless, "the observations . . . have been read and taken into account in reaching the conclusions herein pursuant to SSR 06-3p." (Tr. 30, 31.) Plaintiff does not persuade that the ALJ erred here. Consider what SSR 06-3p says on this subject:

*Medical Source Distinction*

The distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is necessary for three reasons. First, we need evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment. See 20 CFR 404.1513(a) and 416.913(a). Second, only "acceptable medical sources" can give us medical opinions. See 20 CFR 404.1527(a)(2) and 416.927(a)(2). Third, only "acceptable medical sources" can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling

---

[1] SSR 06-3p, which Plaintiff cites, clearly states that nurse practitioners are not included in the category, "acceptable medical source."

5

weight. See 20 CFR 404.1527(d) and 416.927(d).

Making a distinction between "acceptable medical sources" and medical sources who are not "acceptable medical sources" facilitates the application of our rules on establishing the existence of an impairment, evaluating medical opinions, and who can be considered a treating source.

*"Other Sources"*

In addition to evidence from "acceptable medical sources," we may use evidence from "other sources," as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. These sources include, but are not limited to:

Medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists; and

"Non-medical Sources" including, but not limited to:

Educational personnel, such as school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers;

Public and private social welfare agency personnel, rehabilitation counselors; and

Spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, clergy, and employers.

Information from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

Plaintiff fails to articulate how the ALJ's treatment of the nurse practitioner evidence is in conflict with SSR 06-3p. As already discussed, pursuant to <u>Shinseki</u>, plaintiff bears the burden both of showing that an error was made and that she was harmed by the error. For the sake of discussion, even if this Court concluded that, somehow, the ALJ erred in his treatment of the nurse practitioner evidence, Plaintiff has not explained how she was harmed by this. What

6

particular statements by the nurse practitioners should have been given greater weight?

Plaintiff's brief does not say, nor does it propose how giving greater weight to particular

statements might have changed the outcome to one of finding Plaintiff disabled.[2]  This Court

finds no reversible error in the ALJ's weighting of the opinions of the nurse practitioners.  On

the whole, the ALJ gave greatest weight to the opinions of the state agency medical consultants.

The opinions of the state agency medical consultants constitute substantial evidence.

Lastly, Plaintiff contends that the ALJ used an incorrect legal standard to assess

Plaintiff's credibility.  This appears to be grounded in this statement in the decision: "The

claimant's self-reported activities of daily living are inconsistent with an individual experiencing

totally debilitating symptomatology."  (Tr. 25.)  Plaintiff argues that "totally debilitating

symptomatology" is not the standard for disability under the Social Security Act, which is

accurate as a statement of the law but misunderstands what the ALJ meant here.  In this

statement, the ALJ was not summarizing the entire disability determination; instead, plainly, he

was making a simple observation that Plaintiff's self-reported activities of daily living were not

consistent with her claims about the disabling impact of her impairments on her daily

functioning.  The ALJ was explaining the basis for his credibility determination, and Plaintiff has

not persuaded that there was any error.

This Court has reviewed the ALJ's decision and finds that the ALJ's decision is

---

[2] Plaintiff argues that, while the ALJ claims to have considered the opinions of the nurse practitioners, there is no evidence that he did so.  Plaintiff misunderstands her burden of proof.  The claimant bears the burden of proof at steps one through four.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).  At step four, Plaintiff bears the burden of proof of disability and, on appeal, pursuant to Shinseki, Plaintiff bears the burden of proof of harmful error.  Thus, at this juncture, Plaintiff must prove both that the ALJ erred at step four and that she was harmed by the error.

supported by substantial evidence. Plaintiff has failed to persuade this Court that the ALJ erred in his decision or that she was harmed by any errors. This Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.

                                                s/ Stanley R. Chesler
                                              STANLEY R. CHESLER, U.S.D.J.

Dated: October 26, 2018